**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

L.J., individually and on behalf of B.A.J., a child
with a disability,

               Plaintiff,

         -v-

NEW YORK CITY DEPARTMENT OF
EDUCATION, NEW YORK CITY BOARD OF
EDUCATION, and DAVID BANKS, in his official
capacity as Chancellor of the New York City School
District,

              Defendants.

Case No. 23-cv-7267 (ER)(SDA)

Hon. Edgardo Ramos

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

In accordance with Local Rule 56.1 and Rule 56 of the Federal Rules of Civil Procedure,

Plaintiff L.J. on behalf of B.A.J. submits that there is no genuine issue to be tried as to the

following material facts in the record:

1.      At the time L.J. filed her request for an impartial hearing during the 2019–2020

school year, B.A.J. was a ten-year-old student classified by the DOE as speech and language

impaired.  ((Ex. 2) (Transcript of the April 28, 2020 Hearing) at 33:10-15); (Ex. 3) (Hearing Ex.

B); (Ex. 4) (Hearing Ex. Q).

2.      B.A.J. began receiving special education in pre-kindergarten during the 2012-

2013 school year.  (Ex. 2 at 33:18-20); (Ex. 5) (Hearing Ex. AA).

3.      Although an evaluation conducted in February 2013 revealed that B.A.J.'s

expressive language skills were extremely low, the DOE failed to perform a speech-language

evaluation to further assess her language abilities.  (Ex. 2 at 33:16-23); (Ex. 3) (Hearing Ex. B);

(Ex. 6) (Hearing Ex. H).

4.      As a result, B.A.J. did not progress and struggled at school.

5.      The DOE, however, continually denied B.A.J. the educational support that she needed to make meaningful academic progress.  (Ex. 1 at 6); (Ex. 7) (Hearing Ex. A).

6.      The DOE inappropriately placed B.A.J. in general education and Integrated Co-Teaching ("ICT") classrooms for more than six school years despite documented evidence each year that B.A.J. was not making progress and falling further behind her peers.  (Ex. 1. at 6, 43-44); (Ex. 2 at 35:8-16); (Ex. 8) (Hearing Ex. Y); (Ex. 9) (Hearing Ex. Z); (Ex. 10) (Ex. Hearing Ex. BB); (Ex. 11) (Ex.  Hearing Ex. CC); (Ex. 12) (Hearing Ex. DD); (Ex. 13) (Hearing Ex. GG); (Ex. 14) (Hearing Ex. II); (Ex. 15) (Hearing Ex. LL).

7.      The DOE continued to recommend the same inappropriate program and services for seven school years.  (Ex. 2 at 35:8-16); (Ex. 7) (Hearing Ex. A).

8.      By the time B.A.J. started fifth grade, she was reading at a first grade level, could not write a single complete sentence, and fell within the first percentile in math.  ((Ex. 3 (Hearing Ex. B) at ¶ 16); (Ex. 16) (Hearing Ex. C); (Ex. 6) (Hearing Ex. H); (Ex. 17) (Hearing Ex. O); (Ex. 14) (Hearing Ex. II); (Ex. 15) (Hearing Ex. LL).

9.      Even after the DOE retained her in second grade, and almost retained her again in fourth grade during the 2018-2019 school year, the DOE still did not provide the appropriate supports and services that B.A.J. needed.  (Ex. 7) (Hearing Ex. A); (Ex. 12) (Hearing Ex. DD).

10.     After years of begging the DOE to help her child for years without success, L.J. eventually found AFC, a nonprofit organization that represents parents who are low-income, to advocate for their children in connection with their education needs.  (Rodriguez Decl. ¶ 6).

11.     AFC assisted L.J. in obtaining an independent neuropsychological evaluation for B.A.J. (*Id.* ¶ 11).

12.     The results of the independent evaluation made clear that B.A.J. needed a small, language-based classroom setting with intensive special education support throughout each day, as well as intensive, evidence-based academic remediation across all subjects.  (*Id.*)

13.     AFC further assisted L.J. locate the Tiegerman Elementary School ("Tiegerman"), a New York State-approved non-public school ("NPS") that serves students having language-based learning disorders, like B.A.J., by providing a multi-sensory, language-based curriculum with small group and one-on-one instruction.  (Rodriguez Decl. ¶ 12); (Ex. 3) (Hearing Ex. B); (Ex. 18) (Hearing Ex. J).

14.     Although Tiegerman was an NPS that the DOE could have recommended for B.A.J. on her IEP, the DOE did not do so.  (Rodriguez Decl. ¶ 12.)

### The Underlying Impartial Hearing

15.     Prior to enrolling B.A.J. at Tiegerman, AFC, on behalf of L.J. sent the DOE the IDEA-required "ten day notice" notifying the DOE of her intent to place B.A.J. at the Tiegerman school for the 2019-2020 school year if the DOE did not offer B.A.J. a FAPE. (Ex. 24) (Ten Day Notice).

16.     The DOE did not respond to L.J.'s letter by holding an IEP meeting or offering an appropriate school placement.

17.     Instead, the DOE informed L.J. through a letter to AFC that "The DOE has determined that at this time your 10-day notice of unilateral placement claim is not appropriate for settlement.  If you are still interested in pursuing placement or program at the District's expense, you must file a Due Process Complaint."  (Rodriguez Decl. ¶ 13, Ex. 3).

18.     Following the DOE's instruction, on August 21, 2019, L.J., through her attorneys at AFC, filed a request for a due process hearing pursuant to the IDEA, Section 504, and New York Education Law (the "Due Process Complaint"). (Ex. 19) (Hearing Ex. F).

19.     The Due Process Complaint sought, *inter alia,* a finding that the DOE denied B.A.J. a FAPE during the 2012-2020 school years and requested an order that the DOE fund B.A.J.'s tuition at Tiegerman, provide transportation to and from the school, pay for all costs associated with the school including reimbursement for school meals and for B.A.J.'s uniform, and pay for compensatory services and transportation to and from the services.  (*Id.* at 1-2, 9-10).

20.     On August 28, 2019, L.J.'s attorneys at AFC reached out to the DOE to schedule a resolution session in the hopes of resolving the Due Process Complaint without the need to proceed to a hearing. (Rodriguez Decl. ¶ 13, Ex. 4) (Email from AFC to the DOE on August 28, 2019 attempting to schedule a settlement resolution session).

21.     Rather than agree to a full resolution of the hearing, at the resolution session on September 4, 2019, the DOE merely agreed to partial resolution to pay for an evaluation and to hold another IEP meeting.  (Rodriguez Decl. Ex. 5).

22.     Although the resolution session was not successful, AFC attorneys continued to push for settlement without the need for a hearing on the merits.  (*See* Rodriguez Decl. ¶ 15, Ex. 4); (Email Chain between the DOE and AFC from August 2019 through November 2019).

23.     Over the next several months, AFC attorneys repeatedly followed up with the DOE representative on the status of the DOE's investigation of L.J.'s case for settlement.  (*Id.*)

24.     The DOE representative repeatedly informed the AFC attorney that she would get back to her with an update.  (*Id.*)

25.     Based on the good faith assertions that the DOE was investigating the case for settlement, and that "this is a case that most likely will be referred for settlement," (Rodriguez Decl. ¶ 16, Ex. 6) (November 8, 2019 Email from the DOE to AFC) at 1), AFC agreed to the DOE's requests for hearing extensions to allow additional time for the DOE to determine if L.J.'s case was appropriate for settlement.  (*Id.*).

26.     Ultimately, in December 2019, when L.J.'s AFC attorneys asked about the possibility of settlement, the DOE stated that they "will not be referring this case for settlement." (Rodriguez Decl. ¶ 22, Ex. 8).

27.     To meet the parent's burden to show that the requested relief was appropriate and that the equities weighed in favor of ordering the relief, Ms. Wallach collected and produced in disclosure the exhibits that eventually were entered at the hearing in support of L.J.'s relief, prepared witnesses for their testimony, and prepared an opening statement that was delivered at the hearing.  (Rodriguez Decl. ¶ 25).

28.     To save attorney time at the hearing, Ms. Wallach worked with the witnesses to provide their direct testimony by affidavit.  Because these witnesses still needed to be available for cross-examination by the DOE, Ms. Wallach also prepared the witnesses for cross-examination.  (*Id.*)

29.     One of the witnesses was from Lindamood Bell ("LMB"), the tutoring company from whom L.J. was seeking compensatory services.  LMB was represented by their own attorney, and required a subpoena for testimony.  (*Id.*)

30.     Ms. Wallach therefore drafted and served the subpoena and coordinated with their attorney for the witness's testimony at hearing.  (*Id.*)

31.     At the conclusion of the hearing, Ms. Wallach drafted and prepared a closing brief.  (*Id.*); (Ex. 25).

32.     The IHO conducted a hearing on the merits to address the claims and relief sought in the Due Process Complaint on April 28, 2020.  (Ex. 1 at 1).

33.     In order to meet its burden under the IDEA, L.J.'s attorneys entered 39 exhibits and presented the testimony of three witnesses at the hearing.  (*See generally* Ex. 1 at 26-27.

34.     Although the DOE did not present a case in chief, the DOE nevertheless challenged underlying facts presented by L.J. and contested the requested relief:  "[W]e don't agree with the number of hours that the student is receiving . . . [and] we have questions regarding the number of hours being requested." (Ex. 2 at 23:15-25).

35.     As a result, the DOE cross-examined two of L.J.'s three witnesses.  (Ex. 2 at 46:9-60:12 (the DOE's questioning of L.J.'s first witness), 63:7-66:14 (the DOE's questioning of L.J.'s second witness)).

36.     On September 26, 2020, the IHO issued a decision, which was then corrected on October 30, 2020, finding, "the equities favor an award of compensatory services and education to address the deficits resulting from the start of the denial of FAPE alleged, for an extended period of years."  (Ex. 1 at 4-6).

37.     The IHO found that Plaintiff's request for the DOE to pay B.A.J.'s tuition was warranted given "this largely undisputed shortfall in the district's delivered programming."  (Ex. 1 at 6).

38.     The IHO also required that the DOE reimburse L.J. for the expenses already paid toward B.A.J.'s placement and tuition, pay the remainder of tuition directly to the school, pay for 1,300 hours of tutoring services and for transportation to and from the services.  (Ex. 1 at 44).

39.     In addition, the IHO ordered the DOE to pay for translation of the documents related to the Due Process hearing.  (*Id*.)

40.     The DOE did not appeal the order.

### The Instant Litigation

41.     On January 4, 2021, in accordance with the DOE's policy and procedure for submitting fee requests in connection with due process hearings, AFC submitted a request to the DOE for attorneys' fees pursuant to the IDEA and Rehabilitation Act fee shifting provisions. (Shore Decl. ¶12, Ex. 4) (The Fees Request).

42.     The request included timesheets with entries detailing the work each attorney did and the time spent in connection with the Due Process Complaint and hearing.  (*Id*. at 5-12).

43.     AFC attempted to engage in good faith settlement negotiations, but the DOE refused to offer an amount to cover even the time spent by only the primary AFC attorney. (Shore Decl. ¶ 14.)

44.     Because the DOE did not resolve Plaintiff's fee request, Plaintiff filed this complaint for fees pursuant to the IDEA and Rehabilitation Act.  ECF No. 1.

45.     To more efficiently pursue the fees from the underlying action, while allowing AFC to  allocate attorney resources to represent more low-income families in their educational advocacy, the law firm of Glenn Agre Bergman & Fuentes LLP ("Glenn Agre") agreed to co-counsel in the representation of this litigation.  (Ades Decl. ¶ 5).

46.     After Defendants were served with the Fees Complaint on August 22, 2023, Defendants requested a 90-day extension to answer.  ECF No. 16.

47.     Plaintiff agreed to provide the 3-month extension on the express condition that Defendants agree on the record that they will not be seeking another extension, and that if

settlement is not reached within 90 days, the parties will jointly request a settlement conference before the Magistrate Judge.  *Id.*

48.     Defendants memorialized this agreement in their letter to the Court dated September 11, 2023.  *Id.*

49.     The letter was so-ordered that same day.  ECF No. 17.  At Defendants' request, Glenn Agre and AFC provided updated billing records.  (Ex. 20 at 9).

50.     Thereafter, Defendants' counsel ignored repeated correspondence and efforts by Plaintiff's counsel to settle the case.  (*Id.* at 8).

51.     It was not until December 8, 2023, one business day before the Parties' Joint Report was due, that Defendants' counsel increased their settlement offer by a negligible amount, which still was not enough to cover the primary attorney's time on the underlying hearing, which is around $41,000.  (*Id.* at 7).

52.     After Plaintiff's counsel counter-offered, Defendants' counsel provided their "best and last" offer, while adding that "Defendants would not be able to attend a settlement conference with any additional authority."  (*Id.* at 6).

53.     The Court accordingly set a case management conference.  ECF No. 20.

54.     By Letter dated January 11, 2024, Defendants attempted once more to avoid their obligation to confer with the Court, which the Court denied.  ECF No. 21, 23.

55.     Because Defendants refused to proceed to a settlement conference, the Court ordered the parties to brief this motion.

Dated:  New York, NY
         February 9, 2024

GLENN AGRE BERGMAN & FUENTES LLP

By: */s/ Nathan Joseph Ades*
    Nathan Joseph Ades

Nathan J. Ades - ID No. 5851852
Olga L. Fuentes-Skinner ID No. 4073029
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
(212) 970-1620

ADVOCATES FOR CHILDREN OF NEW YORK, INC.

Rebecca C. Shore ID No. RS5158
151 West 30th Street, 5th Floor
New York, New York 10001
(212) 822-9574

*Attorneys for Plaintiffs*