**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

L.J., individually and on behalf of B.A.J., a child
with a disability,

                Plaintiff,

        -v-

NEW YORK CITY DEPARTMENT OF
EDUCATION, NEW YORK CITY BOARD OF
EDUCATION, and DAVID BANKS, in his official
capacity as Chancellor of the New York City School
District,

                Defendants.

Case No. 23-cv-7267 (ER)(SDA)

Hon. Edgardo Ramos

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT FOR FEES

GLENN AGRE BERGMAN & FUENTES LLP
Nathan J. Ades - ID No. 5851852
Olga L. Fuentes-Skinner ID No. OF-6956
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
(212) 970-1620

ADVOCATES FOR CHILDREN OF NEW YORK, INC.
Rebecca C. Shore ID No. RS5158
151 West 30th Street, 5th Floor
New York, New York 10001
(212) 822-9524

*Attorneys for Plaintiffs*

## **TABLES OF CONTENTS**

TABLES OF AUTHORITIES ................................................................................................ iii

I.      PRELIMINARY STATEMENT ............................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 4

        A.  The Underlying Impartial Hearing ............................................................... 5

        B.  The Instant Litigation .................................................................................. 9

        C.  L.J.'s Counsel ............................................................................................. 10

III.    ARGUMENT ............................................................................................................ 11

        A.  Plaintiff is Entitled to Attorneys' Fees as the Prevailing Party in the Underlying
            Administrative Hearing ............................................................................... 11

        B.  The Requested Fees Are Reasonable ........................................................ 14

            1.  Plaintiff's Attorneys' Hourly Rates Are Reasonable ........................ 15

            2.  Total Attorneys' Fees ........................................................................ 16

        A.  AFC Attorneys ........................................................................................... 17

        B.  Glenn Agre Attorneys ................................................................................ 21

            1.  The Amount of Time Plaintiff's Attorneys Worked Was Reasonable ...... 22

            2.  The Requested Costs and Expenses Are Reasonable ........................ 25

IV.     CONCLUSION .......................................................................................................... 25

## <u>TABLES OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*A.D. v. Bd. of Educ.*,
   690 F. Supp. 2d 193 (S.D.N.Y. 2010) .................................................. 12

*A.D. v. New York City Dep't of Educ.*,
   2019 WL 1292432 (S.D.N.Y. 2019) ..................................................... 13

*A.R. v. N.Y.C. Dept. of Educ.*,
   407 F.3d 65 (2nd Cir. 2005) ............................................................... 14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
   522 F.3d 182 (2d Cir. 2008) .......................................................... 14, 15

*Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*,
   548 U.S. 291 (2006) ........................................................................... 25

*B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*,
   716 F. Supp. 2d 336 (S.D.N.Y. 2010) .................................................. 12

*Bettinger v. N.Y.C. Bd. of Educ.*,
   2007 WL 4208560 (S.D.N.Y. Nov. 20, 2007)........................................ 12

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human*,
   532 U.S. 598 (2001) ........................................................................... 12

*C.B. v. New York City Dep't of Educ.*,
   2019 WL 3162177 (S.D.N.Y. 2019) ..................................................... 13

*C.D. v. Minisink Valley Cent. Sch. Dist.*,
   2018 WL 3769972 (S.D.N.Y. Aug. 9, 2018)........................................ 15

*C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*,
   746 F.3d 68 (2d Cir. 2014) ................................................................. 11

*D.B. v. New York City Dep't of Education*,
   2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019) ....................................... 13

*D.B. on behalf of S.B. v. New York City Dep't of Educ.*,
   2019 WL 6831506 ......................................................................... 18, 25

*Florence Cty. Sch. Dist. Four v. Carter*,
   510 U.S. 7 (1993) .............................................................................. 11

*Frank G. v. Bd. Of Educ. Of Hyde Park*,
 459 F.3d 356 (2d Cir. 2006) ........................................................... 11

*G.B. ex rel. N.B. v. Tuxedo*,
 894 F. Supp. 2d ........................................................................... 25

*Green v. City of New York*,
 2010 WL 148128 (E.D.N.Y. Jan. 14, 2010) ................................... 16

*Hardison v. Bd. Of Educ. Of the Oneonta City Sch. Dist.*,
 773 F.3d 372 (2d Cir. 2014) ........................................................... 11

*Johnson v. Ga. Highway Express*,
 488 F.2d 714 (5th Cir. 1974) ......................................................... 15

*L.V. v. N.Y.C. Dep't of Educ.*,
 No. 03-cv-9917 (S.D.N.Y.) ............................................................. 19

*M.D. v. N.Y.C. Dep't of Educ.*,
 2023 WL 2557408 (S.D.N.Y. Mar. 17, 2023) ................................. 19

*M.D. v. N.Y.C. Dep't of Educ.*,
 2018 WL 4386086 (S.D.N.Y. Sept. 14, 2018) ........................... 16, 25

*M.O. v. N.Y.C. Dep't of Educ.*,
 793 F.3d 236 (2d Cir. 2015) ........................................................... 11

*N.R. ex rel. T.R. v. Dep't of Educ. of City Sch. Dist.*,
 2009 WL 8874061 (S.D.N.Y Mar. 31, 2009) ................................. 12

*P.R. v. N.Y.C. Dep't of Educ.*,
 2018 WL 4328012 (July 19, 2018) ...................................... 18, 20, 22

*Quaratino v. Tiffany & Co.*,
 166 F.3d 422 (2d Cir. 1999) ........................................................... 22

*Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*,
 760 F.3d 211 (2d Cir. 2014) ........................................................... 11

*Roberson v. Giuliani*,
 346 F.3d 75 (2d Cir. 2003) ............................................................. 12

*S.B. v. N.Y.C. Dep't of Educ.*,
 117 F. Supp. 3d 355 (S.D.N.Y. 2015) ............................................. 19

*S.K. obo E.N. v. N.Y.C. Dep't of Educ., et al.*,
   No. 17- cv-9906 (S.D.N.Y.) ....................................................................... 19

*S.P., obo M.P.*,
   2022 WL 109266 (S.D.N.Y. Jan. 11, 2022) ............................................... 18

*S.W. obo A.W. v. N.Y.C. Dep't of Educ.*,
   2023 WL 5803415 (S.D.N.Y. 2023) ........................................................... 19

*Sch. Comm. Of Burlington v. Dep't of Educ. Of Mass.*,
   471 U.S. 359 (1985) .................................................................................... 11

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
   489 U.S. 782 (1989) .................................................................................... 12

*Z.C. v. N.Y.C. Dep't of Educ.*,
   222 F. Supp. 3d 326 (S.D.N.Y. 2016) ........................................................ 19

**Statutes, Rules and Regulations**

20 U.S.C. § 1415 ..............................................................................*passim*

28 U.S.C. § 1920 ...................................................................................... 25

29 U.S.C. § 794 .................................................................................... 3, 12

FRCP 54 ..................................................................................................... 25

N.Y. Educ. Law § 4404 ............................................................................. 11

Plaintiff L.J. ("L.J." or "Plaintiff") respectfully submits this memorandum of law in support of her motion for summary judgment seeking an award of reasonable attorneys' fees and costs against defendants New York City Department of Education ("DOE"), New York City Board of Education, and David Banks in his official capacity as Chancellor of the New York City School District (collectively "Defendants").

For the reasons set forth below, Plaintiff's motion should be granted in its entirety.

## I.   PRELIMINARY STATEMENT

This dispute concerns L.J.'s efforts to obtain the appropriate educational supports for her daughter B.A.J., who is a child with an intellectual disability, and across the board deficits in reading, writing, math, speech-language, fine motor abilities, social-emotional functioning, executive functioning, and attention.  For seven years, the DOE repeatedly denied B.A.J. the educational support that she needed to make any meaningful academic progress.  At the time of the hearing at issue, B.A.J. was 11 years old in fifth grade reading at a first grade level.

For seven school years, beginning in September 2012, Defendants ignored their obligations to provide B.A.J. with a Free Appropriate Public Education ("FAPE").  L.J. constantly pled with the DOE officials to get her child the support she needed, but the DOE refused to provide the support that B.A.J. needed to progress.  Making it even harder for Plaintiff to obtain the educational services her daughter needed, the DOE refused to provide key educational documents in L.J.'s language of Mixteco or Spanish, even though the DOE knew that L.J. did not speak or read English, and the DOE had a legal obligation to translate key educational documents for L.J.

Eventually, Plaintiff found Advocates for Children of New York ("AFC"), an education rights nonprofit organization that for more than 50 years has been working with families to

secure the educational supports and services that vulnerable students, including students with disabilities, require to progress.  With AFC's help, L.J. obtained a neuropsychological evaluation for B.A.J., and L.J. for the first time discovered the full scope of B.A.J.'s disabilities and services B.A.J. needed to make up for the services the DOE had denied B.A.J. for so many years.

L.J. also learned through the evaluation that B.A.J's DOE school was not meeting B.A.J.'s needs.  With AFC's help, L.J. found a private school that was appropriate, and notified the DOE in writing (the "Ten Day Notice") that she would be enrolling B.A.J. at the school and requesting that the DOE pay B.A.J.'s tuition at the school, as well as for compensatory services.

Upon receipt of this notification, the DOE informed Plaintiff and AFC that the DOE would not be settling L.J.'s request for B.A.J.'s tuition.  AFC then drafted an impartial hearing request ("Due Process Complaint") on behalf of L.J. against the DOE.  Despite the DOE's initial refusal to settle, AFC attorneys, on behalf of L.J., repeatedly requested that the DOE settle the complaint.  The DOE made no offers to Plaintiff's settlement requests, and instead instructed Plaintiff to proceed to the hearing on the merits.

At the Impartial Hearing, L.J.'s attorneys were required to meet the parent's burden under the IDEA, Section 504 of the Rehabilitation Act, and New York Education Law.  Although the DOE did not present a case in chief, it contested Plaintiff's requested relief, and cross-examined witnesses.  After reviewing the evidence, the Impartial Hearing Officer ("IHO") John Farago issued a 47-page Finding of Fact and Decision ("FOFD") concluding that the DOE engaged in "a substantial and extended denial of FAPE" (Ex. 1 at 32) and ordered the relief that L.J. had requested.

Because Plaintiff is the prevailing party under the IDEA and Rehabilitation Act, Plaintiff is entitled to attorneys' fees pursuant to the fee-shifting provisions of 20 U.S.C.A. § 1415(i)(3) and 29 U.S.C.A. § 794.

Importantly, Plaintiff's attorneys' fees are a direct result of Defendants' litigation choices. Defendants refused to settle the case upon receipt of the Ten Day Notice, requiring Plaintiff to proceed with initiating the underlying administrative hearing. Then, despite multiple requests, Defendants refused to settle the hearing request, forcing AFC to present L.J.'s case at hearing. Ultimately, the IHO ordered all the relief that L.J. had sought in the Due Process Complaint. The attorneys' fees Plaintiff incurred could have easily been avoided if not for the DOE's refusal to settle.

Now, despite Plaintiff's consistent efforts to settle her demand for attorneys' fees, Defendants again have refused to reasonably come to the table. Even now, Defendants have refused to negotiate despite the narrow difference in settlement amounts proffered in settlement discussions. In fact, this motion itself is the embodiment of *Defendants'* insistence to brief rather than avoid attorney and Court time by negotiating.

In contrast, Plaintiff and her attorneys have acted reasonably and judiciously. Plaintiff repeatedly asked the DOE to settle the underlying hearing and the requested fees, but Defendants refused. Plaintiff's fees are reasonable as they are the same rates that this Court has repeatedly awarded for AFC attorneys and below rates routinely accepted in similar cases, and Plaintiff's attorneys staffed and billed for this case in an efficient and cost-conscious manner.

Accordingly, the Court should order Defendants to pay reasonable legal fees and costs in the amount of $63,339 in addition to the fees incurred in this current fees litigation after

3

February 1, 2024, reflecting the time L.J.'s attorneys incurred to successfully secure a FAPE for her daughter and to pursue this instant litigation.

## II.    FACTUAL BACKGROUND

At the time L.J. filed her request for an impartial hearing during the 2019–2020 school year, B.A.J. was a ten-year-old student classified by the DOE as speech and language impaired.  ((Ex. 2) (Transcript of the April 28, 2020 Hearing) at 33:10-15); (Ex. 3) (Hearing Ex. B); (Ex. 4) (Hearing Ex. Q).  B.A.J. began receiving special education in pre-kindergarten during the 2012-2013 school year.  (Ex. 2 at 33:18-20); (Ex. 5) (Hearing Ex. AA).  Although an evaluation conducted in February 2013 revealed that B.A.J.'s expressive language skills were extremely low, the DOE failed to perform a speech-language evaluation to further assess her language abilities.  (Ex. 3) (Hearing Ex. B); (Ex. 6) (Hearing Ex. H).  As a result, B.A.J. did not progress and struggled at school.

The DOE, however, continually denied B.A.J. the educational support that she needed to make meaningful academic progress.  (Ex. 1 at 6); (Ex. 7) (Hearing Ex. A).  The DOE inappropriately placed B.A.J. in general education and Integrated Co-Teaching ("ICT") classrooms for more than six school years despite documented evidence each year that B.A.J. was not making progress and falling further behind her peers.  (Ex. 1 at 6, 43-44); (Ex. 2 at 35:8-16); (Exs. 8-15).

Despite B.A.J.'s worsening academic delays and her mother's best efforts to obtain appropriate academic support for her, the DOE continued to recommend the same inappropriate program and services for seven school years.  (Ex. 2 at 35:8-16); (Ex. 7) (Hearing Ex. A).  As a result, by the time B.A.J. started fifth grade, she was reading at a first grade level, could not write a single complete sentence, and fell within the first percentile in math.  (Ex. 3 (Hearing Ex. B);

(Ex. 6) (Hearing Ex. H); (Exs. 15-17).  Even after the DOE retained her in second grade, and almost retained her again in fourth grade during the 2018-2019 school year, the DOE still did not provide the appropriate supports and services that B.A.J. needed.  (Ex. 7) (Hearing Ex. A); (Ex. 12) (Hearing Ex. DD).

After years of begging the DOE to help her child for years without success, L.J. eventually found AFC, a nonprofit organization that represents parents who are low-income to advocate for their children in connection with their education needs.  (Rodriguez Decl. ¶ 6). AFC assisted L.J. in obtaining an independent neuropsychological evaluation for B.A.J.  (*Id.* ¶ 11).  The results of the independent evaluation made clear that B.A.J. needed a small, language-based classroom setting with intensive special education support throughout each day, as well as intensive, evidence-based academic remediation across all subjects.  (*Id.*)  AFC further assisted L.J. locate the Tiegerman Elementary School ("Tiegerman"), a New York State-approved non-public school ("NPS") that serves students having language-based learning disorders, like B.A.J., by providing a multi-sensory, language-based curriculum with small group and one-on-one instruction.  (Rodriguez Decl. ¶ 12); (Ex. 3) (Hearing Ex. B); (Ex. 18) (Hearing Ex. J).  Given the results of the independent evaluation it became clear that Tiegerman could appropriately address B.A.J.'s learning needs.  (Ex. 6) (Hearing Ex. H).  Although Tiegerman was an NPS that the DOE could have recommended for B.A.J. on her IEP, the DOE did not do so.  (Rodriguez Decl. ¶ 12.)

### A.  The Underlying Impartial Hearing

Prior to enrolling B.A.J. at Tiegerman, AFC, on behalf of L.J., sent the DOE the IDEA-required "Ten Day Notice" notifying the DOE of her intent to place B.A.J. at the Tiegerman school for the 2019-2020 school year if the DOE did not offer B.A.J. a FAPE.  (Ex. 24).  The

DOE did not respond to L.J.'s letter by holding an IEP meeting or offering an appropriate school placement.  Instead, the DOE informed L.J. through a letter to AFC that "The DOE has determined that at this time your 10-day notice of unilateral placement claim is not appropriate for settlement.  If you are still interested in pursuing placement or program at the District's expense, you must file a Due Process Complaint."  (Rodriguez Decl. ¶ 13, Ex. 3).

Following the DOE's instruction, on August 21, 2019, L.J., through her attorneys at AFC, filed a request for a due process hearing pursuant to the IDEA, Section 504, and New York Education Law (the "Due Process Complaint").  (Ex. 19) (Hearing Ex. F).  The Due Process Complaint sought, *inter alia,* a finding that the DOE denied B.A.J. a FAPE during the 2012-2020 school years and requested an order that the DOE fund B.A.J.'s tuition at Tiegerman, provide transportation to and from the school, pay for all costs associated with the school including reimbursement for school meals and for B.A.J.'s uniform, and pay for compensatory services and transportation to and from the services.  (*Id.* at 1-2, 9-10).

L.J.'s attorneys repeatedly tried to settle the Due Process Complaint prior to hearing, but the DOE refused to engage in settlement discussions.  In particular, on August 28, 2019, L.J.'s attorneys at AFC reached out to the DOE to schedule a resolution session in the hopes of resolving the Due Process Complaint without the need to proceed to a hearing.  (Rodriguez Decl. ¶ 15, Ex. 4) (Email from AFC to the DOE on August 28, 2019 attempting to schedule a settlement resolution session).  Rather than agree to a full resolution of the hearing, at the resolution session on September 4, 2019, the DOE merely agreed to partial resolution to pay for an evaluation and to hold another IEP meeting.[1]

---

[1]     In accordance with the IDEA, AFC is not seeking attorneys' fees for the time spent working on this resolution session.

Although the resolution session was not successful, AFC attorneys continued to push for settlement without the need for a hearing on the merits.  (*See* Rodriguez Decl. ¶ 15, Ex. 6) (Email Chain between the DOE and AFC from August 2019 through November 2019).  Over the next several months, AFC attorneys repeatedly followed up with the DOE representative on the status of the DOE's investigation of L.J.'s case for settlement.  (Rodriguez Decl. ¶ 16, Ex. 6).  The DOE representative repeatedly informed the AFC attorney that she would get back to her with an update.  (*Id.*)  Relying on the representations that the DOE was investigating the case for settlement, and that "this is a case that most likely will be referred for settlement" (Rodriguez Decl. ¶ 16, Ex. 6 at 1) (November 8, 2019 Email from the DOE to AFC), AFC agreed to the DOE's requests for hearing extensions to allow additional time for the DOE to determine if L.J.'s case was appropriate for settlement.  (*Id.*)  Ultimately, in December 2019, when L.J.'s AFC attorneys asked about the possibility of settlement, the DOE stated that they "will not be referring this case for settlement."  (Rodriguez Decl. ¶ 22, Ex. 8).

As a result, AFC attorneys began preparing for the hearing on the merits.  To meet the parent's burden to show that the requested relief was appropriate and that the equities weighed in favor of ordering the relief, AFC collected and produced in disclosure the exhibits that eventually were entered at the hearing in support of L.J.'s relief, prepared witnesses for their testimony, and prepared an opening statement that was delivered at the hearing.  To save attorney time at the hearing, AFC worked with the witnesses to provide their direct testimony by affidavit.  Because these witnesses still needed to be available for cross-examination by the DOE, AFC also prepared the witnesses for cross-examination.  One of the witnesses was from Lindamood Bell ("LMB"), the tutoring company from whom L.J. was seeking compensatory services.  LMB was represented by their own attorney, and required a subpoena for testimony.

AFC therefore drafted and served the subpoena and coordinated with their attorney for the witness's testimony at hearing.  At the conclusion of the hearing, AFC drafted and prepared a closing brief.  (Rodriguez Decl. ¶ 25).

The IHO conducted a hearing on the merits to address the claims and relief sought in the Due Process Complaint on April 28, 2020.  (Ex. 1).  In order to meet its burden under the IDEA, L.J.'s attorneys entered 39 exhibits and presented the testimony of three witnesses at the hearing.  (*See generally* Ex. 1 at 26-27).  Although the DOE did not present a case in chief, the DOE nevertheless challenged underlying facts presented by L.J. and contested the requested relief: "[W]e don't agree with the number of hours that the student is receiving . . . [and] we have questions regarding the number of hours being requested."  (Ex. 2 at 23:15-25).  As a result, the DOE conducted lengthy questioning of two witnesses.  (Ex. 2 at 46:9-60:12 (the DOE's questioning of L.J.'s first witness), 63:7-66:14 (the DOE's questioning of L.J.'s second witness)).

On September 26, 2020, the IHO issued a decision, which was then corrected on October 30, 2020, finding, "the equities favor an award of compensatory services and education to address the deficits resulting from the start of the denial of FAPE alleged, for an extended period of years."  (Ex. 1 at 4-6).  The IHO found that Plaintiff's request for the DOE to pay B.A.J.'s tuition was warranted given "this largely undisputed shortfall in the district's delivered programming."  (Ex. 1 at 6).  The IHO also required that the DOE reimburse L.J. for the expenses already paid toward B.A.J.'s placement and tuition, pay for B.A.J.'s meals, pay the remainder of tuition directly to the school, pay for 1,300 hours of tutoring services and for transportation to and from the services.  (Ex. 1 at 44).  In addition, the IHO ordered the DOE to

pay for translation of the documents related to the Due Process hearing.  (*Id*.)  The DOE did not appeal the order.

**B. The Instant Litigation**

On January 4, 2021, in accordance with the DOE's policy and procedure for submitting fee requests in connection with due process hearings, AFC submitted a request to the DOE for attorneys' fees pursuant to the IDEA and Rehabilitation Act fee shifting provisions.  (Shore Decl. ¶ 12, Ex. 4) (The Fees Request).  The request included timesheets with entries detailing the work each attorney did and the time spent in connection with the representation of L.J. for the Due Process Complaint and hearing.  (*Id.* at 5-12).  AFC attempted to engage in good faith settlement negotiations, but the DOE refused to offer an amount to cover even the time spent by only the primary AFC attorney.  (Shore Decl. ¶ 14.)  Because the DOE did not resolve Plaintiff's fee request, Plaintiff filed the complaint filed in this action for fees pursuant to the IDEA and Rehabilitation Act.  ECF No. 1.  To more efficiently pursue the fees from the underlying action, while allowing AFC to allocate attorney resources to represent more low-income families in their educational advocacy, the law firm of Glenn Agre Bergman & Fuentes LLP ("Glenn Agre") agreed to co-counsel in the representation of this litigation.  (Ades Decl. ¶ 5).

After Defendants were served with the Fees Complaint on August 22, 2023, Defendants requested a 90-day extension to answer.  ECF No. 16.  Even though AFC had already spent more than 2 years trying to reach a settlement on fees with the DOE, Plaintiff agreed to provide the 3-month extension on the express condition that Defendants agree on the record that they will not be seeking another extension, and that if settlement is not reached within 90 days, the parties will jointly request a settlement conference before the Magistrate Judge.  Defendants memorialized this agreement in their letter to the Court dated September 11, 2023.  *Id.*  The letter was so-

ordered that same day.  ECF No. 17.  At Defendants' request, Glenn Agre and AFC provided updated billing records. (Ex. 20 at 9).

Thereafter, Defendants' counsel ignored repeated correspondences and efforts by Plaintiff's counsel to settle the case.  (*Id.* at 8).  It was not until December 8, 2023, one business day before the Parties' Joint Report was due, that Defendants' counsel increased their settlement offer by a negligible amount, which still was not enough to cover the primary attorney's time on the underlying hearing, which is around $41,000.  (*Id.* at 7).

After Plaintiff's counsel counter-offered, Defendants' counsel provided their "best and last" offer, while adding that "Defendants would not be able to attend a settlement conference with any additional authority."  (*Id.* at 6).  The Court accordingly set a case management conference.  ECF No. 20.  By Letter dated January 11, 2024, Defendants attempted once more to avoid their obligation to confer with the Court, which the Court denied.  ECF No. 21, 23. Because Defendants refused to proceed to a settlement conference, reneging on their prior commitment to Plaintiff and the Court, the Court ordered the parties to brief this motion. [2]

## C.  L.J.'s Counsel

Over the course of the Due Process hearing, L.J. was primarily represented by Nicole Wallach from AFC, who was supervised by Rita Rodriguez at AFC.  From November 2019 to March 2020, Ms. Wallach was on parental leave, and Diana Aragundi represented L.J.  Ms. Wallach returned from her leave prior to the hearing and represented L.J. at the hearing, supervised by the deputy director of AFC, Matthew Lenaghan.  In the instant proceedings before

---

[2]         Contrary to Defendants' counsel's representations in this litigation, AFC and Corporation Counsel have reached multiple settlement agreements on fees in IDEA hearings with the assistance of a Magistrate Judge at a settlement conference.  It was only in the past few months that Defendants have begun refusing to attend settlement conferences and insisting on briefing all fees motions.  (Shore Decl. ¶ 21).

the Court, L.J. is primarily represented by Olga L. Fuentes-Skinner and Nathan J. Ades at Glenn Agre and Rebecca Shore at AFC.

III. **ARGUMENT**

### A. Plaintiff is Entitled to Attorneys' Fees as the Prevailing Party in the Due Process Hearing

Pursuant to the IDEA, a parent who "believe[s] that a FAPE is not being provided to their child may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district" by filing a due process complaint. *Hardison v. Bd. Of Educ. Of the Oneonta City Sch. Dist.*, 773 F.3d 372, 276 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 215 (2d Cir. 2014)); *see* 20 U.S.C. § 1415(b)(6)(A) (the due process complaint may address "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child"). A school district must pay for the cost of a student's tuition at the private school if the three prongs of the *Burlington/Carter* test are satisfied: (1) the DOE failed to provide the student with a FAPE; (2) the parent's private school placement was appropriate; and (3) equities favor an order of tuition. *See Sch. Comm. Of Burlington v. Dep't of Educ. Of Mass.*, 471 U.S. 359, 367 (1985); *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 12-15 (1993).

Under the first prong, the DOE has the burden to establish that it provided the student with a FAPE. *See* N.Y. Educ. Law § 4404(1)(c); *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 243 (2d Cir. 2015); *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014).

Under the second prong, the parent has the burden to establish the appropriateness of the private placement. *See* N.Y. Educ. Law § 4404(1)(c); *Burlington*, 471 U.S. at 370; *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006).

11

Under the third prong, equitable considerations are weighed to determine if the equities favor an order of tuition.  *See A.D. v. Bd. of Educ.*, 690 F. Supp. 2d 193, 215 (S.D.N.Y. 2010). "A major consideration in deciding whether the third factor is satisfied is whether the parents have cooperated with the [Department] throughout the process to ensure their child receives a FAPE."  *N.R. ex rel. T.R. v. Dep't of Educ. of City Sch. Dist.*, No. 07 CV. 9648 (BSJ), 2009 WL 8874061, at *6 (S.D.N.Y Mar. 31, 2009) (internal quotation marks omitted) (quoting *Bettinger v. N.Y.C. Bd. of Educ.*, No. 06 CV 6889 (PAC), 2007 WL 4208560, at *6 (S.D.N.Y. Nov. 20, 2007)).

As the prevailing party in the hearing before the IHO on her IDEA and § 504 claims, L.J. is entitled to an award of reasonable attorneys' fees.  The IDEA provides that "in any action or proceeding brought under [the IDEA], [a] court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B); *see also* 29 U.S.C. § 794a(b).  "[I]n order to be considered a 'prevailing party[,]' a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003) (citations omitted); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).  A "prevailing party" plaintiff need only succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."  *B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*, 716 F. Supp. 2d 336, 345 (S.D.N.Y. 2010) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)).

Under the IDEA, attorneys' fees and related costs cannot be awarded for legal services performed for the impartial hearing after the time of submission to the parent of a written settlement offer relating to the claims in the hearing if:

> (I) the offer is made within the specified time according to Rule 68 of the Federal Rules of Civil Procedure or in administrative proceedings, more than 10 days before the proceedings starts; (II) the offer is not accepted within 10 days; and (III) the court or administrative hearing officer determines that the relief ultimately granted to the parents is not more favorable than the settlement offer.

20 U.S.C. §1415(i)(3)(D).  Because the DOE never offered L.J. a settlement prior to the underlying hearing, let alone a settlement that included the vast relief that was ordered, this provision is not applicable in the present case.

In determining the attorneys' fees incurred at administrative hearings under the IDEA, this Court has held that parents and their attorneys cannot be penalized as a result of the school district's actions during the hearing process, including litigation strategies that cause delays in the proceedings or the decisions that the school district makes in whether and how to contest the hearing.  *See, e.g.*, *D.B. v. New York City Dep't of Educ.*, 2019 WL 4565128, * 3 (S.D.N.Y. 2019) ("Plaintiff's counsel fully prepared for the contested hearing they reasonably expected and should not be penalized for doing so."); *C.B. v. New York City Dep't of Educ.*, 2019 WL 3162177, *11 (S.D.N.Y. 2019) ("I decline to reduce the award for the post-hearing brief.  The fact that the DOE only made a five-minute-long closing statement should not limit Plaintiff's ability to make the argument she felt was necessary to win the case."); *A.D. v. New York City Dep't of Educ.*, 2019 WL 1292432, *10 (S.D.N.Y. 2019) (rejecting assertion that parent attorney's hourly rate should be reduced because the school district was represented by a non-legal professional).

L.J. is unquestionably the prevailing party in this case.  Rejecting the DOE's challenge to the relief requested, the IHO ruled, "I [f]ind that [B.A.J.] was denied a Free Appropriate Public Education for the four years under review and that an appropriate remedy under *Reid* would look back to the deprivation of FAPE from 2012-13 forward."  (Ex. 1 at 6).  Furthermore, when analyzing the appropriate award of compensatory tutoring services, the IHO specifically found, "the long duration of the denial of FAPE, the testing and recommendation of the proposed provider (Exhibit E and cross-examination in the Transcript), and the summary of the proposed provider's assessment (Exhibit O and their proposed teaching plan (Exhibit P) support the substantial number of hours of proposed intensive tutoring."  (*Id.*)  Therefore, as the prevailing party under the IDEA and § 504, L.J. is entitled to reasonable attorneys' fees and costs.

### B.  The Requested Fees Are Reasonable

In calculating an award of statutory attorneys' fees, courts in the Second Circuit are instructed to follow the standard set forth in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, "bear[ing] in mind all of the case-specific variables" relevant to assessing the reasonableness of attorneys' fees in setting a reasonable hourly rate.  522 F.3d 182, 190 (2d Cir. 2008) (emphasis omitted).  The final determination of the fee award involves a four-step process:  (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.  *Id.*

Consistent with this standard, Plaintiff should be awarded the requested fees in this case.  Her attorneys' hourly rates are reasonable and the amount of time expended was reasonable given the scope of the work done across the impartial hearing covering seven academic years to secure more than $200,000 in tuition payments, tutoring, and meals reimbursements for B.A.J.

### 1.  Plaintiff's Attorneys' Hourly Rates Are Reasonable

To determine whether a requested hourly rate is reasonable, the Court should look to the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  *See A.R. v. N.Y.C. Dept. of Educ.*, 407 F.3d 65 (2d Cir. 2005); *see also C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17-cv-7632, 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018) ("Under the fee-shifting provision of the IDEA, the court determines a reasonable hourly rate 'based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.'")  "The community used for purposes of IDEA fee-shifting litigation is the district in which the issue arose— specifically, where the student was denied a FAPE." *C.D.*, 2018 WL 3769972, at *4.

The Due Process hearing was conducted in New York City, the DOE's main offices are in Manhattan, and this lawsuit was filed in the Southern District of New York in Manhattan. Thus, the relevant community for assessing "market rates prevailing in the community" is New York City, and the Southern District of New York specifically.

In setting hourly rates for each attorney, the Court should also consider the *Johnson* factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by*

*Blanchard v. Bergeron*, 489 U.S. 87 (1989)).  While the Court should consider these factors in assessing the reasonableness of an attorney's hourly rate, it is not required to apply each of them rigidly to the facts of the case—only to consider them holistically in setting the attorneys' fee award.  *See Green v. City of New York*, No. 05-cv-429, 2010 WL 148128, at *10 (E.D.N.Y. Jan. 14, 2010).

Here, Plaintiff benefitted from representation by highly skilled attorneys who were able to secure a decision by the IHO that ordered all of the relief she requested—the "most critical factor in determining the reasonableness of a fee award."  *See M.D. v. N.Y.C. Dep't of Educ.*, No. 17- cv-2417, 2018 WL 4386086, at *1–2, 5 (S.D.N.Y. Sept. 14, 2018) ("The most critical factor in determining the reasonableness of a fee award is indeed the degree of success obtained by plaintiffs' counsel") (internal quotation marks omitted)).  Furthermore, the requested hourly rates are commensurate with Plaintiff's attorneys' respective experience and qualifications and within the range supported by the case law and rates of attorneys in this field in New York City.

1.  **Total Attorneys' Fees**

While complete time records and billing narratives are attached as exhibits to declarations accompanying Plaintiff's motion (Ades Decl. Ex. 23), (Shore Decl. Ex. 1), the tables below contain a summary of the adjusted hourly rates and time worked by each of L.J.'s attorneys in this matter through February 1, 2024:

**GLENN AGRE TIME**

| GABF Staff | Hours | GABF Rate | Total | AFC Rate | Total |
|---|---|---|---|---|---|
| Edward Lee | 1.7 | $375 | $637.50 | $150 | $255.00 |
| N. Sielo Arias | 1.1 | $250 | $275.00 | $150 | $165.00 |
| Nathan Ades | 29.1 | $625 | $19,145.00 | $210 | $6,110.00 |
| Olga L. Skinner-Fuentes | .2 | $1,325 | $265.00 | $420 | $84.00 |
| **Total** | 32.1 | | $20,323.00 | | $6,614.00 |

**AFC TIME**

| AFC Staff | | Hours | AFC Rate | Total |
|---|---|---|---|---|

16

| | | | |
|---|---|---|---|
| Brianna Kitchelt, Staff Attorney | 5.4 | $290 | $1,566.00 |
| Diana Aragundi, Staff Attorney | 4.2 | $270 | $1,134.00 |
| Matthew Lenaghan, Deputy Director | 12.1 | $420 | $5,082.00 |
| Nicole Wallach, Staff Attorney | 155.2 | $290 | $41,515.00 |
| Rebecca Shore, Director of Litigation | 5.9 | $420 | $2,478.00 |
| Rita Rodriguez, Director of ISRP | 13.2 | $375 | $4,950.00 |
| **Total** | 196 | | $56,725.00 |

Notably, Plaintiff is not seeking the standard hourly rates for work performed by Glenn Agre attorneys and staff, but rather rates consistent with the prevailing rates in the relevant legal community: IDEA lawyers in New York City. Furthermore, the fees Plaintiff seeks reflect significant "trimming" of the number of hours actually worked by Glenn Agre attorneys, such that the hours for which Plaintiff seeks fees represent the minimum amount of time reasonably necessary to accomplish only those tasks essential to L.J.'s representation.

### A. AFC Attorneys

Nicole Wallach was the primary attorney from AFC who worked with L.J. and B.A.J. From 2017 to 2023, Ms. Wallach was a staff attorney on AFC's Immigrant Students' Rights Project ("ISRP"), a team focusing primarily on helping immigrant students receive the educational support they need, and representation of students and their parents at special education due process hearings. Ms. Wallach holds a Juris Doctor from Duke University School of Law, which she received in 2015. Ms. Wallach has been admitted to practice in New York state since 2016. Plaintiff seeks an hourly rate of $270 for Ms. Wallach's time working on B.A.J.'s hearing. (Rodrigeuz Decl. ¶ 8).

Diana Aragundi was the primary AFC attorney who worked with L.J. and B.A.J. while Ms. Wallach was on parental leave. Ms. Aragundi also works on AFC's ISRP. Ms. Aragundi holds a Juris Doctor from City University of New York School of Law, which she received in

2015. Ms. Aragundi has been admitted to practice in New York since 2016. Plaintiff seeks an hourly rate of $270 for Ms. Aragundi's time working on B.A.J.'s hearing. (Rodrigeuz Decl. ¶¶ 18-22).

The rate of $270 for Ms. Wallach and Ms. Aragundi are appropriate. This Court has frequently found the rates of attorneys with 4-7 years of experience to be between $270 and $350. *S.P., obo M.P.*, 2022 WL 109266, at *7 (S.D.N.Y. Jan. 11, 20222) (finding rates of $270 for attorney with 4 years experience and $350 for attorney with 7 years experience appropriate); *D.B.*, 2019 WL 6831506, at *5 (finding $300 hourly rate appropriate for fourth-year associate); *P.R. v. N.Y.C. Dep't of Educ.*, 2018 WL 4328012, at *2-3, *11 (July 19, 2018) (awarding $300 hourly rate to associates with two and five years of experience). These rates are also consistent with the rates charged by other attorneys with similar experience in New York City. (*See* Mar Decl. ¶ 6); (Cole-Cutler Decl. ¶ 11); (*see also* Shore Decl. ¶ 13, Exs. 5-7) (Declarations of attorneys filed in support of plaintiff's application for attorney's fees against the same defendants in case No. 23-cv-4580).

Rita Rodriguez was the supervising AFC attorney to Nicole Wallach and Diana Aragundi. Ms. Rodriguez is the Director of AFC's ISRP. Ms. Rodriguez holds a Juris Doctor from Columbia University School of Law, which she received in 2010. Plaintiff seeks an hourly rate of $375 for Ms. Rodriguez's time working on B.A.J.'s hearing. (Rodriguez Decl. ¶¶ 2-5).

Matthew Lenaghan has served as the Deputy Director at AFC since 2006. Mr. Lenaghan graduated from New York University School of Law in 1999. As Deputy Director, Mr. Lenaghan is responsible for oversight of all AFC's programs involving legal services. Additionally, Mr. Lenaghan assists the Executive Director with strategic planning. Mr. Lenaghan

18

was the supervising AFC attorney to Nicole Wallach at the underlying hearing on the merits. (Rodrigeuz Decl. ¶ 27).

Rebecca Shore has served as the Director of Litigation at AFC since 2008.  (Shore Decl. ¶ 8).  Ms. Shore graduated from The George Washington Law School in 1999 *summa cum laude* and was admitted to practice law in New Jersey in 1999, New York in 2000, and California in 2001.  As AFC's Director of Litigation, Ms. Shore oversees all impact litigation, including class actions, individual and group lawsuits, IDEA appeals, and state and federal administrative complaints.  She served as counsel in, among others, *L.V. v. N.Y.C. Dep't of Educ.*, No. 03-cv-9917 (S.D.N.Y.).  (*See also* Shore Decl. ¶ 9).  Ms. Shore supervises AFC staff attorneys in their representation of parents at special education due process hearings and represents parents in federal court in IDEA appeals, *see, e.g.*, *S.B. v. N.Y.C. Dep't of Educ.*, 117 F. Supp. 3d 355 (S.D.N.Y. 2015), *Z.C. v. N.Y.C. Dep't of Educ.*, 222 F. Supp. 3d 326 (S.D.N.Y. 2016), and cases seeking attorneys' fees, *see, e.g.*, *S.W. obo A.W. v. N.Y.C. Dep't of Educ.*, 2023 WL 5803415 (S.D.N.Y. 2023), *S.K. obo E.N. v. N.Y.C. Dep't of Educ., et al.*, No. 17- cv-9906 (S.D.N.Y.). (*See also* Shore Decl. ¶ 9).  In addition, Ms. Shore has presented at numerous New York State and federal continuing legal education programs on several topics, including special education rights under the IDEA and Section 504, Due Process proceedings under the IDEA and Section 504, and attorneys' fees under the IDEA and Section 504.  (Shore Decl. ¶ 9).

Plaintiff seeks hourly rates of $420 for Ms. Shore's and Mr. Lenaghan's work, and $375 for Ms. Rodriquez's work.  This Court has repeatedly found this rate appropriate for Ms. Shore in connection with her work on special education hearings and fees litigations.  *See S.W.*, 2023 WL 5803415, at *6 ("Ms. Shore's requested rate of $420 and Ms. Paek's requested rate of $400 are both reasonable. These rates are in line with recent awards for highly experienced IDEA

litigators in lightly contested administrative proceedings like these, adjusted for inflation."); *S.P. obo M.P.*, 2022 WL 109266 (S.D.N.Y. Jan. 11, 2022) (approving hourly rates of $420); *see also M.D. v. N.Y.C. Dep't of Educ.*, 2023 WL 2557408, at *4 (S.D.N.Y. Mar. 17, 2023) (adopting magistrate judge's recommendation of $425 per hour for experienced special education practitioner).  These rates are consistent with, or lower than, the rates that other education attorneys in New York City charge.  (*See, e.g.*, Declaration of Jared Stein, dated February 7, 2024; Declaration of Nelson Mar, dated February 8 2024; Declaration of Nancy Rothenberg dated February 8, 2024; Declaration of Jesse Cole Cutler dated February 8, 2024).  Like Ms. Shore, Mr. Lenaghan has more than 20 years of legal experience, all of it working on education advocacy.  With Mr. Lenaghan's experience and expertise, a rate of $420 should be awarded for his time incurred on the underlying hearing.  Similarly, the rate of $375 for Ms. Rodriguez's time is appropriate and within the rates awarded and charged in this District.

Brianna Kitchelt works on AFC's Direct Client Services and Impact Litigation Team, and is supervised by Rebecca Shore.  Ms. Kitchelt holds a Juris Doctor from American University Washington College of Law, which she received in 2017.  Ms. Kitchelt has been admitted to practice in Maryland since 2018 and is awaiting admission to New York state.  Plaintiff seeks an hourly rate of $290 for Ms. Kitchelt's time.  This rate is consistent with the rates that this Court has ordered for attorneys with similar years of experience to Ms. Kitchelt, *see, e.g.*, *P.R. v. N.Y.C. Dep't of Educ.*, 2018 WL 4328012, at *11 (S.D.N.Y. July 19,2018) (finding a $300 hourly rate to be reasonable for associates with two years' experience and a $140 hourly rate to be reasonable for paralegals), and consistent with the rates other education attorneys with similar experience charge in New York City.  (*See* Mar Decl. ¶ 6; Cole-Cutler Decl. ¶ 10-11; Shore Decl. ¶13, Exs. 5-7).

Throughout the hearing, AFC support staff and interns assisted in performing the necessary tasks as much as possible.  Specifically, Gardina Molina was a Social Work Intern during the relevant time period.  Ms. Molina was studying for a Masters in Social Work at Fordham University during her tenure at AFC.  Additionally, Annys Bai and Advaita Rao-Sharma were Legal Assistants during the relevant time period.  Despite their valuable work on this matter, Plaintiff does not seek compensation for their time in this motion.

### B.  Glenn Agre Attorneys

Ms. Fuentes-Skinner is a partner of the law firm Glenn Agre and is the supervising partner for Plaintiff's case.  Although Ms. Fuentes-Skinner's current standard hourly rate is $1,325, Glenn Agre agreed to a steeply discounted rate in this case, and is seeking AFC's rate of $420 here.  Ms. Fuentes-Skinner graduated with a Bachelor of Arts from Boston University in 1998 and received her Juris Doctor from the UCLA School of Law in 2001.  Ms. Fuentes-Skinner brings with her decades of experience representing children and families in all stages of IDEA cases and serves on the board of a special education school and the New York Lawyers for the Public Interest.  Ms. Fuentes-Skinner's time on this case has been significantly limited, and in certain circumstances not accounted for, in order to reduce cost.  (Ades Decl. ¶ 13); (Ex. 23) (Ms. Fuentes-Skinner only billed $84 dollars to this matter).

Nathan J. Ades was a third-year and is currently fourth-year associate at Glenn Agre at all relevant times of this Fees Complaint.  Mr. Ades is a 2020 graduate of the Benjamin N. Cardozo School of Law, where he served as an Editor on the Journal of Equal Rights and Social Justice and a legal intern at the Bet Tzedek Civil Litigation Clinic.  Mr. Ades became a member of the New York bar in April of 2021.  Mr. Ades has represented various parties in pro bono matters

over the last several years.  Mr. Ades's standard hourly rate ranged from $625 to $750 an hour during the time he worked on this matter.  (*Id.* ¶ 24.)

Plaintiff asks this Court to set an hourly rate of $210 for Mr. Ades's work.  The requested rates represent a reduction of approximately 70% off Mr. Ades's current standard hourly rate of $650.  *See P.R. v. N.Y.C. Dep't of Educ.*, No. 17-cv-4887, 2018 WL 4328012, at *11 (S.D.N.Y. July 19, 2018) (finding a $300 hourly rate to be reasonable for associates with between two and five years' experience).

Edward Lee is a litigation manager and N. Sielo Arias is a paralegal at Glenn Agre.  Their standard rates are $375 and $250 an hour, respectively.  Plaintiff seeks a discounted hourly rate of $150 for their work performed on this matter.

### 1.  The Amount of Time Plaintiff's Attorneys Worked Was Reasonable

The hours expended on this case are reasonable and should not be reduced further beyond the reductions already made by Plaintiff's counsel, as indicated above.  Courts typically reduce attorneys' fees if the time expended and legal services provided were redundant or excessive considering the nature of the case.  *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

The hours expended by Plaintiff's attorneys throughout the Due Process hearing process were reasonable, and ultimately caused by the DOE's unreasonable refusal to resolve B.A.J.'s needs.  AFC attorneys secured an evaluation that identified for the first time B.A.J.'s educational needs that led to the identification of the school and compensatory services ordered.  Despite counsel's several attempts to settle, the DOE refused.  Instead, the DOE informed L.J. through a letter to AFC that "The DOE has determined that at this time your 10 day notice of unilateral placement claim is not appropriate for settlement.  If you are still interested in pursuing

placement or program at the District's expense, you must file a Due Process Complaint."

(Rodriguez Decl., Ex. 3) (TDN Determination Report).

At the DOE's direction, counsel filed said Due Process Complaint. (Ex. 19).  Filing the

Due Process Complaint was the only appropriate action given the fact that B.A.J. was denied a

FAPE.  (Ex. 1 at 8) ("When the parties cannot otherwise agree about how to deliver a Free

Appropriate Public Education to a particular student, the laws specify this impartial hearing

mechanism to resolve those disputes and allow the parties to carry on.")  Accordingly, "the onus

[was] on the family," L.J., to "detail the specific issues to be addressed" with regard to B.A.J's

denial of FAPE.  (Ex. 1 at 16-17).

To prepare for the hearing and meet the parent's burden to show that the requested relief

was appropriate and that the equities weighed in favor of ordering the relief, Ms. Wallach

collected and produced in disclosure the 39 exhibits that eventually were entered at the hearing

in support of L.J.'s relief, prepared witnesses for their testimony, and prepared an opening

statement that was delivered at the hearing.  To save attorney time at the hearing, Ms. Wallach

worked with the witnesses to provide their direct testimony by affidavit.  Because these

witnesses still needed to be available for cross-examination by the DOE, Ms. Wallach also

prepared the witnesses for cross-examination.  Ms. Wallach drafted and served the subpoena and

coordinated with LMB's attorney for the witness's testimony at hearing.  At the conclusion of

the hearing, Ms. Wallach drafted and prepared a closing brief.  (Rodriguez Decl. ¶ 25).

Counsel was required to engage in this work in light of the DOE's challenges to L.J.'s

evidence and request for compensatory relief.  (Ex. 2 at 23:15-25).  At the April 28, 2020

Hearing, the DOE challenged the "number of hours being requested" and cross-examined two of

L.J.'s three witnesses about the relief that L.J. was seeking.  (*Id.* at 46:9-60:12, 63:7-66:14).

Plaintiff's attorneys staffed the case efficiently.  AFC staffed the hearing with more junior attorneys, with senior attorneys providing a supervisory and review role.  (Rodriguez Decl. ¶ 27).  While Ms. Wallach primarily represented Plaintiff at the Due Process hearing, Ms. Aragundi, took over while Ms. Wallach was on parental leave from November 2019 to March 2020.  (*Id.* ¶ 17).  Ms. Aragundi then transitioned the work back to Ms. Wallach as soon as Ms. Wallach returned.  (*Id.* ¶ 24).  Thus, AFC took steps to avoid duplication in the work on the hearing.  Likewise, AFC removed from the requested fees the time expended by two legal assistants and one intern thereby already providing the DOE with a discounted expense calculation.

The hours expended by Plaintiff's attorneys on this fees litigation are similarly reasonable, and caused solely by Defendants' refusal to settle this case prior and during this litigation.  After the IHO held the DOE denied B.A.J. a FAPE, Plaintiff's attorneys submitted a request to the DOE for attorneys' fees.  (Shore Decl. Ex. 4).  The DOE refused to offer to pay for even Ms. Wallach's time on the underlying hearing.  (Ex. 20).  Accordingly, Plaintiff had no other choice but to file the Fees Complaint.  Despite Plaintiff's attempts to negotiate, Defendants failed to do so in good faith.  Furthermore, despite Plaintiff having significantly decreased its fees demand as an offer for settlement, Defendants still refused to cover even the primary attorney's time on the underlying hearing.  (Ex. 20).

The work incurred in this litigation likewise has been reasonable and efficient.  Only one Glenn Agre associate, Mr. Ades, was staffed to L.J.'s case at any given time, ensuring that no redundant work was performed.  Mr. Ades performed the vast majority of the work on the complaint, briefings filed with the Court, and communications with Defendants' counsel.  (Ades Decl. ¶12).  The role of AFC as co-counsel has been to provide their insight as experts in the

special education hearing process within New York City and attorneys' fees for IDEA and Rehabilitation Act cases, as well as AFC's knowledge of the underlying hearing.  Ms. Shore and Ms. Kitchelt's work has been limited to reviewing and editing documents, and providing AFC's insights and experience in this proceeding.  (Shore Decl. ¶18).  In many instances, Glenn Agre attorneys saved time by relying on the subject matter expertise and prior research of their colleagues at AFC.  (Ades Decl. ¶ 12).

### 2.  The Requested Costs and Expenses Are Reasonable

Plaintiff also is entitled to an award of all reasonable costs associated with this matter under 20 U.S.C. § 1415(i)(3)(B) and Rule 54(d)(2) of the Federal Rules of Civil Procedure.  The Supreme Court has held that the term "costs" as used in 20 U.S.C. § 1415(i)(3)(B) refers to the list provided under 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court.  *See Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 297–98 (2006); *see also G.B. ex rel. N.B. v. Tuxedo*, 894 F. Supp. 2d at 443.

Plaintiff seeks only $400 in filing fees for initiating the instant action before this Court.  Because such costs are recoverable under 28 U.S.C. § 1920, they are recoverable under the IDEA's fee-shifting provisions as well.  *See* 20 U.S.C. § 1415(i)(3)(B); *see also D.B.,* 2019 WL 6831506, at *7; *M.D.,* 2018 WL 4386086, at *6.  AFC is not seeking any costs.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant her motion for summary judgment and issue an award for attorneys' fees and related costs in the amount of $63,339 in addition to the fees incurred after February 1, 2024 that will be submitted with Plaintiff's Reply papers.

Dated:  New York, New York
          February 9, 2024

GLENN AGRE BERGMAN & FUENTES LLP

By: */s/ Nathan Joseph Ades*
    Nathan Joseph Ades

Nathan J. Ades - ID No. 5851852
Olga L. Fuentes-Skinner ID No. 4073029
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
(212) 970-1620

ADVOCATES FOR CHILDREN OF NEW YORK, INC.

Rebecca C. Shore ID No. RS5158
151 West 30th Street, 5th Floor
New York, New York 10001
(212) 822-9574

*Attorneys for Plaintiffs*