UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

L.J., *individually and on behalf of*
*B.A.J., a child with a disability*,

                              Plaintiff,

– *against* –

NEW YORK CITY DEPARTMENT OF
EDUCATION, NEW YORK CITY
BOARD OF EDUCATION, *and* DAVID
BANKS, *in his official capacity as*
*Chancellor of the New York City School*
*District*,

                              Defendants.

**OPINION & ORDER**

23-cv-07267 (ER)

RAMOS, D.J.:

      L.J. brought this action individually and as a parent of B.A.J., a child with a disability.  In an administrative action against the New York City Department of Education, L.J. obtained compensatory services and other relief based on the Department's failure to provide B.A.J. with a free appropriate public education.  L.J. now seeks to shift fees pursuant to the Individuals with Disabilities Education Act (IDEA) and section 504 of the Rehabilitation Act of 1973.  Defendants oppose the request, arguing that the requested rates and hours billed are unreasonable.  L.J.'s motion for fees and costs is GRANTED, subject to the modifications below.

## I.    BACKGROUND

### A.  The Administrative Action

      B.A.J. began receiving special education services in pre-kindergarten during the 2012–2013 school year.  Doc. 28 ¶ 2.  According to L.J., the Department "continually denied B.A.J. the educational support that she needed to make meaningful academic progress."  *Id.* ¶ 5.  For more than six school years, the Department "inappropriately placed B.A.J. in general education and Integrated Co-Teaching [] classrooms."  *Id.* ¶ 6.

Eventually, with the assistance of Advocates for Children of New York, Inc. (AFC), L.J. obtained an independent neuropsychological evaluation for B.A.J. *Id.* ¶ 11. The results of that evaluation indicated that B.A.J. needed "a small, language-based classroom setting with intensive special education support." *Id.* ¶ 12. AFC helped L.J. locate the Tiegerman Elementary School, a New York State–approved nonpublic school that provides "a multi-sensory, language-based curriculum with small group and one-on-one instruction." *Id.* ¶ 13.

On August 19, 2019, L.J. notified the Department that she intended to enroll B.A.J. at Tiegerman for the 2019–2020 school year. *Id.* ¶ 15; *see* Doc. 38-24. Two days later, on August 21, L.J. filed a due process complaint requesting a hearing. Doc. 28 ¶ 18; *see* Doc. 38-19. The complaint alleged that the Department had denied B.A.J. a free appropriate public education from 2012 to 2019. Doc. 28 ¶ 19. The complaint requested that the Department be ordered, among other things, to fund B.A.J.'s tuition at Tiegerman; provide transportation to and from the school; pay for costs associated with the school, including reimbursement for school meals and B.A.J.'s uniform; and pay for compensatory tutoring services and transportation to and from those services. *Id.*

AFC then reached out to the Department to schedule a settlement session. *Id.* ¶ 20. At the settlement session in September 2019, the Department agreed to only partial resolution of the matter. *Id.* ¶ 21. AFC attorneys followed up in multiple emails with a Department representative about whether she would refer the case to the Office of Legal Services for settlement. *Id.* ¶ 23; *see* Doc. 34-6. In the meantime, AFC consented to the Department's requests for hearing extensions to allow the Department to determine whether the case could be settled. Doc. 28 ¶ 25. Ultimately, in December 2019, the Department representative informed AFC: "I will not be referring this case for settlement. I will not be presenting a case so we will need to schedule a hearing date." Doc. 34-8.

In advance of the hearing, AFC staff attorney Nicole Wallach collected and disclosed supporting exhibits and prepared an opening statement.  Doc. 28 ¶ 27.  Wallach also worked with witnesses to provide direct testimony by affidavit, and she prepared the witnesses for cross-examination.  *Id.* ¶ 28.  Another AFC staff attorney, Diana Aragundi, assisted with preparation for the hearing.  Doc. 35 ¶ 23.  And Rita Rodriguez, the director of the Immigrant Students' Rights Project at AFC, consulted with Wallach and Aragundi on strategy throughout the process.  *Id.* ¶ 26.

The hearing was held on April 28, 2020.  Doc. 28 ¶ 32.  It lasted three hours and thirteen minutes.  Doc. 47 ¶ 8.  L.J. submitted thirty-nine exhibits and presented testimony from three witnesses.  Doc. 28 ¶ 33.  The Department did not present a case-in-chief at the hearing, but it did challenge some of the facts asserted by L.J. and her requested relief.  *Id.* ¶ 34.  The Department also cross-examined two of L.J.'s witnesses. *Id.* ¶ 35.  Wallach prepared a closing brief at the conclusion of the hearing.  *Id.* ¶ 31. AFC's deputy director, Matthew Lenaghan, attended the hearing with Wallach and provided guidance.  Doc. 35 ¶ 27.

The hearing officer issued a decision on September 26, 2020, and a corrected decision on October 30, 2020.  Doc. 28 ¶ 36; *see* Doc. 38-1.  That decision concluded that "the equities favor an award of compensatory services and education."  Doc. 28 ¶ 36. The hearing officer ordered the Department to reimburse L.J. for the expenses already paid toward B.A.J.'s placement and tuition, to pay the remaining tuition directly to the school, and to pay for 1,300 hours of tutoring services and transportation to and from those services.  *Id.* ¶ 38.

### B.  This Litigation

In January 2021, AFC submitted a request for attorney fees to the Department.  *Id.* ¶ 41.  After settlement negotiations proved unsuccessful, L.J. filed this action for attorney fees in August 2023.  *Id.* ¶¶ 43–44; *see* Doc. 1.  The law firm Glenn Agre Bergman & Fuentes LLP agreed to serve as co-counsel with AFC in this litigation.  Doc. 28 ¶ 45.  The

case has been staffed by Olga Fuentes-Skinner, a partner at the firm; Nathan Ades, an associate; Edward Lee, the firm's litigation manager; and N. Sielo Arias, a paralegal. Doc. 39 ¶¶ 5, 8. AFC director of litigation Rebecca Shore and AFC staff attorney Brianna Kitchelt have also worked on this fees action. Doc. 37 ¶ 7.

Defendants answered the complaint on December 11, 2023. Doc. 18. The parties submitted a joint letter the next day. Doc. 19. L.J. asserted that the parties were less than $10,000 apart in their settlement negotiations and that a settlement conference "would be beneficial." *Id.* at 2. Defendants stated that a settlement conference "would not be fruitful" in light of L.J.'s "unreasonable settlement posture." *Id.* at 3.

The Court held a conference on January 12, 2024, and directed the parties to proceed to briefing on L.J.'s request for fees. L.J. filed her motion on February 9. Doc. 27.[1] Defendants filed their opposition on March 8. Doc. 42. L.J. replied on March 15 and requested permission to submit a supplemental brief to address arguments raised in Defendants' attorney declarations. Doc. 49 at 2 n.3. The Court granted that request, Doc. 54, and L.J. filed a supplemental brief on March 25, Doc. 60. Defendants, in turn, requested leave to submit a sur-reply. Doc. 55. The Court granted that request as well, Doc. 57, and Defendants filed their sur-reply on April 5, Doc. 61.[2]

---

[1] L.J. also moved to seal several of the exhibits submitted with the motion. Doc. 24. She explained that the exhibits include personal, medical, and educational information about B.A.J. Doc. 25 at 3–4. Defendants did not oppose the request. *Id.* at 4. Accordingly, the motion to seal is granted. *Cf. S.W. v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 3592 (LGS), 2023 WL 5803415, at *10 (S.D.N.Y. Sept. 7, 2023) (granting motion to seal administrative record because "the Record is voluminous and permeated with confidential information" and "[r]edacting the Record would be unduly burdensome in the context of an application for attorneys' fees").

[2] In granting Defendants' request to file a sur-reply, the Court stated that "Defendants may file a sur-reply of no more than five pages." Doc. 57. Defendants filed a ten-page sur-reply, Doc. 61, and L.J. objected, Doc. 64. Defendants then asked for leave to file excess pages *nunc pro tunc*, asserting that they "misinterpreted the Court's March 22 order to mean that Defendant was permitted to submit five pages for each of the reply submissions." Doc. 65. The Court notes that its March 22 order explicitly said that Defendants could file "*a* sur-reply of no more than five pages." Doc. 57 (emphasis added). And Defendants instigated this wave of supplemental briefs and sur-replies by including excessive legal argument in their attorney declarations. *See, e.g.*, Doc. 44 ¶¶ 12, 21; Doc. 47 ¶¶ 15–18; Doc. 48 ¶¶ 8, 13–14, 18–25, 30. Nevertheless, the Court grants Defendants' request for a page extension.

## II.    LEGAL STANDARD

Under the IDEA, a district court, "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). The fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C).

Courts use the lodestar method to calculate reasonable attorney fees. *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023). "Under the lodestar method, a 'fee award is derived by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate.'" *Id.* (alteration in original) (quoting *G.M. ex rel. R.F. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)).

"In determining the first component of the lodestar—the number of hours reasonably expended—the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022)). Furthermore, the court "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (quoting *Raja*, 43 F.4th at 87). "The other component of the lodestar—the reasonable hourly rate—is the rate a paying client would be willing to pay after considering all pertinent factors, including the *Johnson* factors." *Id.* (internal quotation marks and citation omitted).[3]

In conducting this analysis, the Court is mindful that "the 'essential goal' of fee shifting 'is to do rough justice, not to achieve auditing perfection.'" *Id.* at 125 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

---

[3] *See generally Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

### III.    DISCUSSION

There is no dispute that L.J. is a prevailing party and is entitled to a fee award. Doc. 42 at 5. The question is whether her requested fees are reasonable.

### A. Reasonable Rates

L.J. argues that her proposed billing rates are reasonable based on the scope of the work her attorneys did "to secure more than $200,000 in tuition payments, tutoring, and meals reimbursements for B.A.J." Doc. 29 at 14. Defendants disagree. They maintain that the administrative proceeding here was simple and uncontested. Doc. 42 at 9. In Defendants' view, there is "no evidence that this matter was in any way novel or required higher skill than the average IDEA case." *Id.* at 11.

In determining whether an hourly rate is reasonable, courts look to the "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). "The prevailing market rate has been characterized as 'the rate a paying client would be willing to pay . . . bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'" *V.W. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 2376 (RA), 2022 WL 37052, at *3 (S.D.N.Y. Jan. 4, 2022) (omission in original) (quoting *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021)). Courts also consider the *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*S.W. v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 3592 (LGS), 2023 WL 5803415, at *3–4 (S.D.N.Y. Sept. 7, 2023) (quoting *Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019)). The court "may consider the *Johnson* factors holistically, rather than applying

each factor individually to the facts of the case." *V.W.*, 2022 WL 37052, at *3; *see also, e.g.*, *H.A. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *3 (S.D.N.Y. Feb. 25, 2022) ("A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." (citation omitted)).

The relevant community here is the Southern District of New York—where the underlying administrative action and this litigation were centered—and the relevant practice area is special education law.  In this case, the *Johnson* factors do not point uniformly in one direction or the other.  The administrative action was relatively straightforward, and the relief requested "was similar to many other matters that the [Department] handles."  Doc. 47 ¶ 7; *see, e.g.*, *S.W.*, 2023 WL 5803415, at *5 (noting that relatively low rates may be appropriate where the underlying hearings were "very brief and largely uncontested" and the issues "were not particularly complex or novel").  At the same time, L.J. "recovered essentially all of the relief sought, which is 'the most critical factor' in setting the hourly rate."  *S.W.*, 2023 WL 5803415, at *5 (citation omitted).  And it is not true, as the Department asserts, that the hearing was entirely uncontested.  The Department challenged certain facts presented by L.J. and her requested relief, and it cross-examined two of L.J.'s witnesses.  Doc. 28 ¶¶ 34–35.

After considering the *Johnson* factors, case-specific variables, and judicial decisions in similar cases, the Court concludes that L.J.'s requested hourly rates are largely reasonable and reflect what a client would be willing to pay.

### 1.  AFC

L.J. requests fees for six AFC attorneys.  Two legal assistants and one social work intern from AFC also worked on various case-related tasks, but L.J. does not seek compensation for their time.  Doc. 29 at 21.

    *a.  Senior Attorneys*

L.J. requests fees for three attorneys in directorial positions at AFC.  Rebecca Shore is the director of litigation at AFC and has held that title since 2008.  Doc. 37 ¶¶ 1, 8.  She received her law degree in 1999.  *Id.* ¶ 8.  Matthew Lenaghan is the deputy director of AFC and has served in that role since 2006.  Doc. 35 ¶ 27.  Lenaghan also graduated from law school in 1999.  *Id.*  Rita Rodriguez is the director of the Immigrant Students' Rights Project at AFC.  Doc. 35 ¶ 2.  She graduated from law school in 2010, joined AFC as a staff attorney in May 2015, and assumed her current role in August 2017. *Id.* ¶¶ 3, 5.

L.J. seeks hourly rates of $420 for Shore and Lenaghan and $375 for Rodriguez. Doc. 29 at 19.  The Court finds that these rates are reasonable.  Courts have approved a $420 hourly rate for Shore in other IDEA cases.  *See S.W.*, 2023 WL 5803415, at *6; *S.P. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 8380 (ALC) (SN), 2022 WL 109266, at *5–6 (S.D.N.Y. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 484855 (S.D.N.Y. Feb. 16, 2022).  The same rate is reasonable for Lenaghan, who also has extensive experience in education advocacy.  Doc. 29 at 20; *see, e.g.*, *S.F. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 11147 (PAE), 2023 WL 4531187, at *6 (S.D.N.Y. July 13, 2023) (finding $425 hourly rate reasonable for attorney with "deep experience" in special education field where the Department "only modestly contested the relief plaintiffs sought and did not call any witnesses or offer any exhibits").  And the Court concludes that a $375 hourly rate is reasonable for Rodriguez, who has been at AFC for almost a decade and has been in a directorial position since 2017.  Doc. 35 ¶ 5.  *See generally S.F.*, 2023 WL 4531187, at *6 ("In recent years, '[t]he prevailing market rate for experienced, special-education attorneys in the New York area . . . [has been] between $350 and $475 per hour.'" (alterations and omission in original) (citation omitted)).

### b. Staff Attorneys

Additionally, L.J. requests fees for three AFC staff attorneys. Nicole Wallach received her law degree in 2015 and was admitted to practice in New York in 2016. Doc. 35 ¶ 8. She worked as a staff attorney at AFC from December 2017 until 2023. *Id.* Diana Aragundi graduated from law school in 2015 and was admitted to practice in New York in 2016. Doc. 35 ¶¶ 19–20. She joined AFC as a staff attorney in February 2019. *Id.* ¶ 18. Brianna Kitchelt has been a staff attorney at AFC since 2021. Doc. 37 ¶ 10. She received her law degree in 2017 and was admitted to practice in Maryland in 2018. *Id.* Kitchelt was admitted to practice in New York in March 2024. Doc. 51 ¶ 5.

L.J. seeks a $270 hourly rate for Wallach and Aragundi and a $290 hourly rate for Kitchelt. Doc. 29 at 17–18, 20. The Court finds that these rates are reasonable as well. As another court explained, "[r]ates between $290 and $325 for mid-level to senior associates and their staff attorney counterparts in nonprofit legal organizations are in line with recent awards in similarly lightly contested cases, particularly when adjusted for inflation." *S.W.*, 2023 WL 5803415, at *7 (collecting cases). The requested rates for the AFC staff attorneys are at the low end of that range or below. *See also, e.g.*, *P.R. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4887 (LTS) (KNF), 2018 WL 4328012, at *10–11 (S.D.N.Y. July 19, 2018) (approving $300 hourly rate for junior associate with expertise in special education law), *report and recommendation adopted*, 2018 WL 4301366 (S.D.N.Y. Sept. 10, 2018).

### 2. Glenn Agre

Glenn Agre has served as co-counsel with AFC in this federal action for fees. L.J. seeks fees for two attorneys and two staff members at the firm.

### a. Attorneys

Olga Fuentes-Skinner is a partner at Glenn Agre. Doc. 39 ¶ 6. She graduated from law school in 2001. *Id.* Fuentes-Skinner has decades of experience representing children and families in all stages of IDEA cases. *Id.* Nathan Ades is an associate at the

firm.  *Id.* ¶ 7.  He received his law degree in 2020 and was admitted to practice in New York in 2021.  *Id.*

L.J. requests hourly rates of $420 for Fuentes-Skinner and $210 for Ades.  Doc. 29 at 21–22.  Those figures reflect significant reductions of the attorneys' standard hourly rates.  Doc. 39 ¶ 10 (stating that Fuentes-Skinner's standard hourly rate is $1,325 and that Ades's standard hourly rate ranged from $625 to $750 in the time he worked on this matter).  Fuentes-Skinner's time on the case was also "significantly limited, and in certain circumstances not accounted for, in order to reduce cost."  *Id.*

Defendants propose a reduced $100 hourly rate for Fuentes-Skinner based on the "minimal contribution" of 0.2 hours that she billed.  Doc. 42 at 3 & n.7.  Other courts have reduced rates based on "the brevity and non-substantive nature of the work [the attorney] performed."  *S.F.*, 2023 WL 4531187, at *7 (reducing hourly rate to $200 where attorney billed total of 9.6 minutes on case for "two conferences with a notary").  But in this case, Fuentes-Skinner's billed hours—while minimal—were substantive:  she reviewed a draft of the complaint and discussed it with Ades.  Doc. 38-23.  And Fuentes-Skinner has decades of experience with IDEA cases.  Doc. 39 ¶ 6.  The Court finds that a $420 hourly rate—equivalent to what the Court awards the most senior AFC attorneys who worked on the matter—is reasonable for Fuentes-Skinner.[4]

Defendants appear to propose a higher initial rate for Ades—$225 per hour—than what L.J. requests.  Doc. 42 at 3.  Defendants then propose applying a 10% reduction to that figure, resulting in an adjusted hourly rate of $202.50.  *Id.* at 3–4.  Alternatively, Defendants suggest that the Court should award $200 per hour for all attorney time billed in the federal action.  *Id.* at 3 n.9 (collecting cases).  The Court will not reduce Fuentes-Skinner's rate for the reasons already discussed.  And the Court finds that an hourly rate

---

[4] Fuentes-Skinner apparently billed an additional hour in the period between February 5 and March 14, 2024, for a total of 1.2 hours.  *See* Doc. 52-1.  But Glenn Agre's billing records do not indicate how the additional hour was spent, so the Court will not award fees for it.

of $210—significantly reduced from his standard hourly rate—is reasonable for Ades, who graduated from law school in 2020. *Cf. K.G. v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 9476 (ER), 2024 WL 3466810, at *6 (S.D.N.Y. July 19, 2024) (concluding that $150 hourly rate was reasonable for junior associate who received law degree in 2022).

   *b. Staff Members*

  Edward Lee is the litigation manager and N. Sielo Arias is a paralegal at the firm. Doc. 29 at 22.  L.J. requests an hourly rate of $150 for their work.  *Id.*  Defendants propose a reduced rate of $100 per hour.  Doc. 42 at 3–4.

  "In this District, '[p]aralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases.'"  *S.F.*, 2023 WL 4531187, at *9 (alteration in original) (citation omitted).  The higher rate of $120 or $125 per hour is typically awarded to paralegals "with evidence of specialized qualifications."  *Id.* (citation omitted).  In this case, L.J. has not provided any information about Lee's and Arias's qualifications.  The Court will therefore reduce their rates to $100 per hour.  *See, e.g.*, *J.G. v. N.Y.C. Dep't of Educ.*, --- F. Supp. 3d ---, ---, No. 23 Civ. 959 (PAE), 2024 WL 728626, at *10 (S.D.N.Y. Feb. 22, 2024) (noting that when plaintiffs fail to provide evidence about relevant qualifications and experience, "courts typically award fees at the bottom of the customary fee range"), *appeal filed*, No. 24-800 (2d Cir. Mar. 29, 2024).

## B. Reasonable Hours

  "A fee award should compensate only those hours that were 'reasonably expended' by the attorneys on this case."  *S.W.*, 2023 WL 5803415, at *8 (citation omitted).  The court should exclude "excessive, redundant or otherwise unnecessary hours."  *Id.* (citation omitted).  At the same time, the court need not "seek 'auditing perfection' in evaluating a fee application."  *Id.* (citation omitted).

  Defendants raise several challenges to the hours billed by L.J.'s attorneys.  After considering those arguments and independently reviewing the billing records submitted by L.J., the Court concludes that a 20% reduction is appropriate for the hours billed in the

administrative action and a 25% reduction is appropriate for the hours billed in this federal action.

### 1.  Hours in the Administrative Action

Multiple factors support a reduction for the hours billed in the underlying administrative action.  First, Defendants argue that AFC's billing records are vague.  Doc. 42 at 19.  They point to the use of broad terms such as "Status," "Next Steps," and "Case Goals."  Doc. 48 ¶ 29.  Where those terms appear in the billing records, they are sometimes accompanied by other information—such as the point of contact and a description of the activity—that is sufficient for the Court to evaluate the entry.  *See* Doc. 36-1.  But in other cases, the billing entries "are not susceptible to effective review to determine whether they represent clerical work that should have been done by a paralegal or administrative staff, or whether they are duplicative or excessive."  *S.W.*, 2023 WL 5803415, at *9 (applying 20% reduction and explaining that "a substantial proportion of AFC's billing entries" were vague because they were "labeled 'Scheduling' or simply 'Evaluation' coupled with 'Next Steps' or 'Case Goals'").  That weighs in favor of a reduction.

Next, Defendants assert that AFC began billing too far in advance of the date it filed the due process complaint.  Doc. 42 at 19.  While the complaint was filed in August 2019, AFC began billing over a year earlier, in May 2018.  *See* Doc. 36-1.  By Defendants' calculation, Nicole Wallach—the lead staff attorney on the case for AFC— billed 78.6 hours in the period before the complaint was filed.  Doc. 42 at 19.

L.J. responds that when she contacted AFC in 2018, she "had minimal understanding of the [Department's] special education system, let alone the [Department's] sophisticated and litigious impartial hearing system."  Doc. 60 at 1.  As a result, AFC spent a significant amount of time collecting information about B.A.J.'s educational needs to assert in the complaint and at the hearing.  *Id.* at 1–2.  The Court acknowledges that some of the pre-complaint billing may have been necessary to gather

information and prepare for the filing of the complaint and the hearing. *See N.G. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 8488 (PGG) (JLC), 2024 WL 133615, at *6 (S.D.N.Y. Jan. 12, 2024) ("[S]imply because an initial review of the files occurred a significant time prior to the administrative hearing does not mean it was not necessary work completed for the client's benefit."). But due in part to the ambiguity of some entries—for example, those labeled simply "evaluation" or "placement"—the Court cannot conclude that all the pre-complaint hours billed were reasonable. *Cf. S.W.*, 2023 WL 5803415, at *9 (explaining that certain entries were "too distinct in both time and substance to constitute 'preparation of the complaint' or any other matter sufficiently related to proceeding under § 1415" (citation omitted)). This further suggests that a reduction is appropriate.

In addition, AFC's billing records include numerous entries for 0.1 hours. *See* Doc. 36-1. Such entries are not inherently problematic, but they may become excessive "when an attorney on a single day bills multiple 0.10 hour entries for [discrete] tasks, where the tasks individually appear likely to have occupied less than 0.10 hours and in total [appear] likely to have occupied less than the sum total of the 0.10 hour increments." *N.L. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 11215 (LGS) (SN), 2023 WL 2872624, at *6 (S.D.N.Y. Jan. 20, 2023) (second alteration in original), *report and recommendation adopted as modified*, 2023 WL 2523636 (S.D.N.Y. Mar. 15, 2023). Here, there are at least a few entries—in particular, days that include multiple 0.1-hour entries for emails—that fall into this category, warranting a reduction. *See, e.g.*, *T.P. v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 9413 (PAE), 2024 WL 986587, at *10 (S.D.N.Y. Mar. 7, 2024) (reducing hours where attorneys, on the same day, "often billed 0.10 hours for mundane tasks such as sending or reviewing a single email"), *appeal filed*, No. 24-797 (2d Cir. Mar. 29, 2024); *Lei v. A&C Seafood Int'l Grp. Corp.*, No. 21 Civ. 03471 (OEM) (SJB), 2023 WL 8828839, at *5 (E.D.N.Y. Dec. 21, 2023) ("Separating out multiple entries of 0.1 hours that likely each took less than 6 minutes is a basis for an across-the-board reduction of fees.").

The Court also concludes that the hours AFC spent on the due process complaint and the hearing are somewhat excessive. Defendants assert that AFC billed 25.5 hours to draft and review the ten-page complaint. Doc. 42 at 21; *see* Doc. 38-19. L.J. notes that the complaint "had to detail the full scope of the [free appropriate public education] denials over all seven school years to avoid a motion to dismiss, which the [Department] often files in impartial hearings." Doc. 49 at 3–4. While it may be true that the complaint had to provide detail about B.A.J.'s educational history, the Court still finds that the complaint filed in this case was not especially complex. *See J.G.*, --- F. Supp. 3d at ---, 2024 WL 728626, at *11 (concluding that billing fifteen hours was excessive where eleven-page complaint simply recited child's educational history and made "boilerplate requests for relief"); *H.W. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 08604 (JLR), 2023 WL 5529932, at *10 (S.D.N.Y. Aug. 28, 2023) (finding that billing 11.4 hours was unreasonable "to draft a straightforward nine-page Due Process Complaint").

Similarly, Defendants assert that AFC billed 71.3 hours to prepare for a hearing that lasted just over three hours, which results in a "preparation-to-proceeding" ratio of almost 22:1. Doc. 42 at 22. L.J., for her part, contends that the actual ratio is closer to 6:1, with approximately 27.1 hours spent on hearing preparation and 3.8 hours spent on the hearing itself. Doc. 60 at 4. According to Defendants, however, AFC's billing records reflect that 62.8 hours were billed for "Hearing Prep" and "Witness Prep" alone. Doc. 61 at 7.

"For a *contested* hearing, courts in this district have reasoned that roughly six hours of preparation for every one hour of hearings is appropriate." *B.C. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2840 (ER), 2022 WL 3214374, at *8 (S.D.N.Y. Aug. 9, 2022), *on reconsideration*, 2023 WL 2301424 (S.D.N.Y. Mar. 1, 2023). As discussed above, the hearing in this matter was not entirely uncontested. But L.J. does not explain how she arrived at the figure of 27.1 hours for hearing preparation. And again, due in part to the vagueness of some time entries, the Court is unable to conclusively say that the 6:1 ratio

calculated by L.J. is accurate. Accordingly, the Court finds that a reduction is also appropriate due to the amount of time billed for the hearing.

In the end, the Department requests that the Court impose a 30% reduction across the board for the work performed in the underlying administrative action. Doc. 42 at 3. While the Court will not go that far, it finds that a reduction is warranted based on the vagueness of some billing entries, the excessive use of 0.1-hour entries, and overbilling for certain tasks. "Rather than engage in a painstaking line-item review of each billing entry, in calculating an appropriate reduction of compensable hours '[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.'" *M.M. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 6915 (ER), 2022 WL 3043218, at *10 (S.D.N.Y. Aug. 2, 2022) (alteration in original) (citation omitted). "Courts in this district have applied this strategy numerous times, generally reducing excessive fees by 20% to 50%." *Id.* The Court will therefore impose a 20% reduction for all hours in the administrative action. *See B.C.*, 2022 WL 3214374, at *9 (applying 20% reduction where firm overbilled for certain tasks); *M.M.*, 2022 WL 3043218, at *10 (same).

2. *Hours in This Litigation*

Defendants object to the hours billed in this federal action as well. They argue that Glenn Agre and AFC overbilled for the time spent drafting (1) the complaint and initiating documents; (2) letters to the Court; and (3) the memorandum of law and supporting declarations. Doc. 42 at 23–25. Defendants ask the Court either to award no fees at all for this litigation or to apply an 80% reduction across the board. *Id.* at 23.

The Court again finds that a reduction is appropriate. Glenn Agre billed a total of 89.5 hours on the federal action through March 14, 2024. *See* Doc. 38-23; Doc. 52-1. AFC billed an additional 37.2 hours. *See* Doc. 50-3. In total, then, L.J.'s attorneys have spent at least 126.7 hours on this litigation.

That total is significantly higher than what other courts have found reasonable for a standard IDEA attorney fees action. *See, e.g.*, *V.W.*, 2022 WL 37052, at *6 (concluding that 46.7 hours billed was reasonable, "notwithstanding the limited scope and straightforward nature of the case"); *B.B. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4255 (VEC) (SDA), 2018 WL 1229732, at *3 (S.D.N.Y. Mar. 8, 2018) (holding that counsel should not have needed more than 40 hours to litigate fee petition); *see also M.M.*, 2022 WL 3043218, at *10 (finding that 59.9 hours billed was excessive). This fee proceeding was not particularly complex, and some of the hours billed by Glenn Agre and AFC—for instance, more than ten hours to draft and file a straightforward complaint—are excessive. *See, e.g.*, *J.G.*, --- F. Supp. 3d at ---, 2024 WL 728626, at *12 (finding that 3.9 hours billed to prepare simple complaint was excessive). The Court therefore concludes that a reduction is warranted.

Defendants' proposed reductions, however, are far too drastic. The Court notes that Glenn Agre assigned a more junior attorney to take the lead on this litigation. *See* Doc. 29 at 24. As other courts have recognized, such assignments may reasonably result in more hours billed. *See O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 371–72 (S.D.N.Y. 2018) (commending plaintiff's firm for assigning junior attorney to fee application and noting that "we fully understand why it might have taken [that attorney] some time to review the administrative record in this case to get a firm grasp of the justification for fees"); *see also L.M. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 11175 (AT) (BCM), 2023 WL 2872707, at *10 (S.D.N.Y. Feb. 14, 2023) (declining to penalize plaintiff for assigning task to junior attorney at lower hourly rate, "even where some additional review is necessary"), *report and recommendation adopted*, 2023 WL 2495917 (S.D.N.Y. Mar. 14, 2023).

Based on "the straightforward nature of this federal action," the Court concludes that a 25% reduction of hours is appropriate. *See Z.H. v. N.Y.C. Dep't of Educ.*, No. 23 Civ. 3081 (ER), 2024 WL 3385690, at *8 (S.D.N.Y. July 12, 2024) (applying 25%

reduction), *appeal filed*, No. 24-2123 (2d Cir. Aug. 13, 2024); *B.C.*, 2022 WL 3214374, at *9 (same).

### C.  Costs

"A district court may award reasonable costs to the prevailing party in IDEA cases." *J.G.*, --- F. Supp. 3d at ---, 2024 WL 728626, at *13.  Here, L.J. seeks $400 in filing fees for initiating this federal action.  Doc. 29 at 25.  Defendants do not oppose that request.  The Court will therefore award $400 in costs.  *See, e.g.*, *S.F.*, 2023 WL 4531187, at *12 (awarding costs for filing fee).

### D.  Fee Cap

The IDEA does not allow a plaintiff to recover attorney fees for services performed after a written offer of settlement has been made if:

> (1) "the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins"; (2) "the offer is not accepted within 10 days"; and (3) "the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement."

*J.G.*, --- F. Supp. 3d at ---, 2024 WL 728626, at *13 (quoting 20 U.S.C. § 1415(i)(3)(D)(i)).

Defendants assert that they made a settlement offer of $36,000 on July 24, 2023, and another offer of $40,200 on December 11, 2023.  Doc. 42 at 2.  If the Court concludes that L.J. is entitled to an award below those offers for the work performed through those dates, they argue, then L.J. may not recover fees for any work performed after those dates.  *Id.*; *see, e.g.*, *J.G.*, --- F. Supp. 3d at ---, 2024 WL 728626, at *13 (applying fee cap where plaintiff declined Department's offer to settle case for $54,300, which was higher than amount that court determined plaintiff was entitled to as of offer date).

Applying the reductions discussed above, the Court finds that L.J. is entitled to $42,456 for the time spent on the underlying administrative action.  AFC attorneys did

not bill any time on the administrative action after March 15, 2021. *See* Doc. 50-3. In other words, as of March 15, 2021—well before either of Defendants' offers—L.J. was entitled to at least $42,456 in fees. Because that total is greater than what Defendants offered, the fee cap does not apply. *See, e.g.*, *D.S. v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 10641 (GHW) (RFT), 2024 WL 2159785, at *12 (S.D.N.Y. Apr. 29, 2024) (concluding that fee cap did not apply where amount of fees and costs that firm was entitled to prior to settlement offer was greater than that offer), *report and recommendation adopted*, 2024 WL 2158583 (S.D.N.Y. May 14, 2024); *S.F.*, 2023 WL 4531187, at *13 n.15 (similar).

\*    \*    \*

Ultimately, with the appropriate reductions, the Court concludes that L.J. is entitled to $42,456 in fees for the administrative action, calculated as follows:

| Name | Hourly Rate | Hours | Total |
|---|---|---|---|
| **Nicole Wallach** | $270 | 124.16 | $33,523.20 |
| **Diana Aragundi** | $270 | 3.36 | $907.20 |
| **Rita Rodriguez** | $375 | 10.56 | $3,960 |
| **Matthew Lenaghan** | $420 | 9.68 | $4,065.60 |
| | | | **$42,456** |

The Court also concludes that, with the appropriate reductions, L.J. is entitled to $22,993.50 in fees for this federal action, calculated as follows:

| Name | Hourly Rate | Hours | Total |
|---|---|---|---|
| **Rebecca Shore** | $420 | 18.15 | $7,623 |
| **Brianna Kitchelt** | $290 | 9.75 | $2,827.50 |
| **Olga Fuentes-Skinner** | $420 | 0.15 | $63 |
| **Nathan Ades** | $210 | 53.25 | $11,182.50 |
| **Edward Lee** | $100 | 6.825 | $682.50 |

| **N. Sielo Arias** | $100 | 6.15 | $615 |
| --- | --- | --- | --- |
| | | | **$22,993.50** |

In total, therefore, L.J. is entitled to $65,449.50 in attorney fees plus $400 in costs.

## IV.    CONCLUSION

For the foregoing reasons, L.J.'s request for attorney fees and costs is GRANTED, subject to the modifications discussed.  L.J. is entitled to $65,449.50 in attorney fees plus $400 in costs.

The Clerk of Court is respectfully directed to enter judgment in favor of L.J., terminate the motions, Docs. 24, 27, 65, and close the case.

It is SO ORDERED.

Dated:    August 16, 2024
           New York, New York

_____
           EDGARDO RAMOS, U.S.D.J.